IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK09-40266-TLS |
| | ) | |
| JUDITH L. WILLIAMS, | ) | CH. 7 |
| | ) | |
| Debtor. | ) | |
| LIBERTY FIRST CREDIT UNION, | ) | ADV. NO. A09-4023-TLS |
| a State Chartered Credit Union, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JUDITH L. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Trial was held in Lincoln, Nebraska, on December 1, 2009, on the Complaint to Determine Dischargeability filed by Plaintiff, Liberty First Credit Union (Fil. #1). James L. Haszard appeared for Plaintiff, and David P. Kyker appeared for Debtor-Defendant. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I). The parties were given the opportunity to submit written closing arguments and this matter is now ready for decision.

Liberty First Credit Union ("Liberty First") seeks a judgment against Defendant, Judith Williams, in the amount of $22,000.00 and a finding that the judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as a willful and malicious injury. The parties agreed to bifurcate the trial in order to first litigate the issue of liability and dischargeability under 11 U.S.C. § 523(a)(6), while reserving for trial at a later date the issue of the amount of the judgment, if liability is found. For the reasons discussed below, this Court finds that the exception to discharge contained in 11 U.S.C. § 523(a)(6) is not applicable and that any remaining balance owed to Liberty First is subject to discharge in the bankruptcy case of Judith Williams, Case No. BK09-40266-TLS.

*FINDINGS OF FACT*

1. In October 2003, Scott and Judith Williams, then husband and wife, purchased and resided in the real property and improvements located at 6000 Woodstock Avenue, Lincoln, Nebraska. Subsequent to their purchase, they made many improvements to the property.

2. On June 28, 2004, Mr. and Mrs. Williams executed two promissory notes payable to Liberty First, one in the amount of $364,800.00, and the other in the amount of $52,600.00. The notes were secured by one or more deeds of trust encumbering their home.

3. On or about April 15, 2008, Mr. Williams moved from the home and a dissolution of marriage proceeding ensued. According to the testimony of Judith Williams, she was left with no money or other assets to support herself and her son. She was forced to rely upon Medicaid, selling assets, and the charity of her church to provide for her survival. At the time of trial, Ms. Williams asserted that her ex-husband was in arrears in payment of child support and alimony in an amount in excess of $40,000.00.

4. Ms. Williams had essentially been a stay-at-home mom during the last 14 years. She was not employed at the time of trial largely due to a recent breast cancer diagnosis and treatment.

5. Ms. Williams testified that starting in June 2008 she began selling items from the house to help make ends meet. She sold some of the carpeting and pad that had been installed in the house subsequent to their purchase of the home. She removed cabinet hardware that she had previously installed, but left behind the original cabinet hardware. She sold the oven, cooktop, sink and disposal, and tools. She removed for later sale a pantry-style cabinet and a laundry room bench with an overhead cabinet. Ms. Williams testified that the sales were to various persons who heard she had items for sale. She further testified that she did not sell the refrigerator, microwave, dishwasher, and various furnishing items. Instead, those items were repossessed by Nebraska Furniture Mart. Ms. Williams further testified that contrary to the assertions of Liberty First, she did not remove any light fixtures nor did she remove the center island. She also testified that her ex-husband had removed the whirlpool tub many months prior to their separation.

6. Ms. Williams testified that during her extended process of moving from the home, she did periodically leave the home unlocked to enable the purchasers of items to have access to the premises. She acknowledged that during the time the home was unlocked, unknown persons could have removed additional items from the premises.

7. Ms. Williams also testified that she had no intent to injure Liberty First. Instead, her sole intent was to raise money to support herself and her son.

8. Ms. Williams further testified that during a pre-foreclosure walk-through of the home with Liberty First's loan officer, Shawn Lang, she discussed removing and selling items for her survival. It was Ms. Williams' understanding from that conversation that Mr. Lang agreed with her position that she should be entitled to remove anything that she and her ex-husband had put into the property after they purchased it. Specifically, she thought Mr. Lang agreed that "if you put it in, you can take it out." Mr. Lang also testified, but he does not recall making that statement or otherwise giving Ms. Williams that impression.

9.   By early November 2008, Ms. Williams and her son had moved out of the home. Liberty First foreclosed on its deeds of trust and, on November 7, 2008, conducted its trustee's sale. The sale resulted in a deficiency owed to Liberty First.

10.   Mr. Lang testified that Ms. Williams left the home in good and clean condition, with the only issues being the result of the removal of the carpet, center island, pantry cabinet (and resulting minor drywall damage), ceiling fans, kitchen lights, cabinet hardware, switch plates, and window treatments.

## *DISCUSSION*

A debt may be excepted from the discharge of debts granted under 11 U.S.C. § 727 if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To except a debt from discharge under that section, a plaintiff must establish, by a preponderance of the evidence, that the debt arises from an injury that is both willful and malicious. *Sells v. Porter (In re Porter)*, 539 F.3d 889, 893 (8th Cir. 2008). In this context, the term "willful" means that the injury, not merely the act leading to the injury, must be deliberate or intentional; and a "malicious" injury is one that is targeted at the creditor, in the sense that the conduct is certain or almost certain to cause financial harm. *Jamrose v. D'Amato (In re D'Amato)*, 341 B.R. 1, 4-5 (B.A.P. 8th Cir. 2006). Further, the injury must have arisen from an intentional tort. *Osborne v. Stage (In re Stage)*, 321 B.R. 486, 492 (B.A.P. 8th Cir. 2005) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).

If the debtor's actions were not done with the intent to injure the creditor, the debt cannot be excepted from discharge under § 523(a)(6). *Land O'Lakes Farmland Feed LLC v. Gehl (In re Gehl)*, 325 B.R. 269, 276 (Bankr. N.D. Iowa 2005). A "mere technical conversion does not necessarily satisfy the requirements for nondischargeability under § 523(a)(6)." *Auto Mart, Inc. v. Wendt (In re Wendt)*, 355 B.R. 769, 775 (Bankr. W.D. Mo. 2006).

The record before the Court does not establish willfulness or maliciousness. The evidence simply does not lead to the conclusion that Ms. Williams deliberately or intentionally acted to injure the real property or to harm Liberty First. Rather, her undisputed testimony was that she sold items that she and her ex-husband had put into the home for the sole purpose of supporting herself and her son. She did so on the belief (albeit incorrect) that she had the right to do so since she and her ex-husband had paid for those items and put them into the home. She left the home in a clean, neat, and orderly condition. Her actions simply were not done with the intent to injure Liberty First and cannot be excepted from discharge under § 523(a)(6). *See* the order denying summary judgment in *Centennial Bank v. Welchert (In re Welchert),* Adv. Proc. No. A06-8125-TJM (Bankr. D. Neb. June 18, 2007).

Likewise, periodically leaving the home unlocked to allow purchasers to remove their purchased items does not rise to the level of willful and malicious injury to Liberty First. Ms. Williams testified that she only did so to make the purchased items available prior to the foreclosure

sale. There is no evidence that she intended to allow anyone to come into the home to remove whatever they wanted.

Since the exception to discharge contained in § 523(a)(6) does not apply, any remaining indebtedness of Ms. Williams to Liberty First Credit Union was discharged in her Chapter 7 proceeding.

Separate judgment to be filed.

DATED:  January 14, 2010.

> BY THE COURT:
>
> /s/ Thomas L. Saladino
> Chief Judge

Notice given by the Court to:
    *James L. Haszard
    David P. Kyker
    Rick D. Lange
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.